IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RONALD G. LINDSEY, SR.                                                                     PLAINTIFF

v.                                        Civil No. 6:13-CV-06031

WARDEN REED, MAJOR McHANN,
LT. DYCUS, and CORIZON MEDICAL
UNIT DIRECTOR PRATT                                                                     DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, Ronald G. Lindsey, Sr., pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated in the Arkansas Department of Corrections ("ADC"), Ouachita River Unit. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before me is a Motion for Summary Judgment filed by Defendants Dycus, McHann, and Reed (the "ADC Defendants") (Doc. 34) and a Motion for Summary Judgment filed by Defendant Pratt (Doc. 38). After careful consideration, the undersigned makes the following Report and Recommendation.

### I. BACKGROUND

Plaintiff filed his Complaint on March 29, 2013, in the Eastern District of Arkansas. (Doc. 2) The Eastern District properly transferred the case to this Court on April 4, 2013. (Doc. 3) In his Complaint, Plaintiff names Warden Reed, Major McHann, Lt. Dycus, and Mr. Pratt as Defendants in this matter. (Doc. 2, pp. 1-2) Plaintiff indicates he is suing each of the Defendants in both their individual and official capacities. Plaintiff alleges that on December 7, 2012,

1

Defendant Dycus removed the large handicap shower chair from the "golf barracks" and replaced it with a smaller broken shower chair with no handles. (Doc. 2, p. 4) Plaintiff claims he needs the large shower chair due to his physical impairment, and that he was denied use of the large shower chair because other inmates were abusing the large chair. (Doc. 2, p. 4) Plaintiff states it was Defendants Dycus and Pratt that had an "issue" with the larger shower chair. (Doc. 2, p. 4)

For relief, Plaintiff requests (1) that Defendant Dycus admit he removed the chair because other inmates were using it improperly, (2) that the chair be replaced with a new large shower chair, and (3) for "monetary and compensatory damages due to mental and physical stress." (Doc. 2, p. 5)

Plaintiff attached Grievance OR-12-01570 to his Complaint. (Doc. 2, pp. 6-8) The initial Grievance was dated December 7, 2012. (Doc. 2, p. 6) In it, Plaintiff states that Defendant Dycus took the shower chair from golf barracks, and that Plaintiff needs the shower chair because he cannot use a low chair or bench in the shower since he cannot get up and down due to rheumatoid arthritis in his hands and legs. (Doc. 2, p. 6) The initial response to the Grievance states: "That is a security issue. A shower chair has been provided. Drop a request if you think you need to be moved to Hotel barracks." (Doc. 2, p. 6) On December 19, 2012, Warden Reed responded to the Grievance stating that Lt. Dycus did remove the shower chair from Plaintiff's barracks "because it was designated for people of a larger stature and was needed elsewhere," that a replacement chair had been provided, and that if Plaintiff felt the replacement chair was inadequate to meet his medical needs, he should contact medical personnel to inform them of that. (Doc. 2, p. 7) Plaintiff appealed the disposition of his Grievance on December 20, 2012, stating that he is large (6' tall and 260 lbs.) and the chair was equipped for large persons; that it is difficult for him to sit in the

2

replacement chair and get up on his own due to his arthritis; that the shower chair had been in the barracks for over a year without any security problems; that the replacement chair is smaller and unstable on an uneven shower because of the drain; and, that Defendants Dycus and Pratt removed the chair "for whatever reasons they come up with."  (Doc. 2, p. 7)  The response to Plaintiff's Grievance appeal was dated January 31, 2013, and it determined that Lt. Dycus stated that the rolling shower chair "was being utilized for everything except for what it was designed," that "[m]edical decided to take the chair and give it to an inmate who has a more severe case," and that the chair was replaced with a new chair on the same date.  (Doc. 2, p. 8)  The Warden's response that the Grievance was "without merit" was affirmed, and the appeal was denied.  (Doc. 2, p. 8)

Plaintiff also attached Inmate Request Forms to his Complaint.  (Doc. 2, pp. 9-10)  On February 21, 2013, Plaintiff submitted an Inmate Request Form to the security department, stating that the removal of the large handicap shower chair "now risked the injury of several handicap inmates."  (Doc. 2, p. 9)  In response, Plaintiff was informed that the chair was removed at the request of medical, and therefore, Plaintiff needed to write to Defendant Pratt regarding the issue.  (Doc. 2, p. 9)  On the same date, Plaintiff also submitted an Inmate Request Form to the medical department, specifically addressed to Defendant Pratt, complaining of the large shower chair being removed, and explaining that he could not sit in the replacement chair because of his physical disability and large build.  (Doc. 2, p. 10)  Defendant Pratt responded by instructing Plaintiff to "[d]rop a request to have Ms. Boettger evaluate you," and he advised Plaintiff that "[w]e can move you to another barracks where there will not be a problem with the chair."  (Doc. 2, p. 10)

Defendant Pratt filed a Motion to Dismiss on June 10, 2013, contending that Plaintiff had failed to state a constitutional claim.  (Doc. 16)  Defendant Pratt specifically argued that Plaintiff had not alleged any physical injury due to the change of the shower chair.  (Doc. 17, p. 2)  On

3

December 30, 2013, the Honorable James R. Marschewski recommended that this motion be denied because Plaintiff had requested injunctive relief as well as monetary relief. (Doc. 26) Judge Marschewski's Report and Recommendation was adopted by Order entered on February 5, 2014. (Doc. 28)

The ADC Defendants filed their Motion for Summary Judgment on February 12, 2016. (Doc. 34) Defendant Pratt also filed his motion for Summary Judgment on February 12, 2016. (Doc. 37) A hearing was held on March 29, 2016, to permit Plaintiff to orally respond to these motions. Plaintiff appeared by videoconference. Defense counsel appeared in person.

At the hearing, Plaintiff testified he had only filed one grievance about the shower chair, which was the Grievance attached to his Complaint. In response to questions from the bench, he testified, "it was Dycus I had the complaint against." Plaintiff testified there is a bench attached to the wall in the shower, and that "it is a little harder to reach" than the chair. He testified he had a medical script for a shower chair. He testified that he fell in the shower while trying to transfer himself from his wheelchair to the replacement shower chair. He previously alleged this incident, stating that the smaller chair flipped sideways and he fell on the floor injuring his shoulder, in his Objection (Doc. 27) to Judge Marschewski's Report and Recommendation. He also testified that he had to have a rotator cuff replacement after he fell in the shower. He agreed that neither Defendant Reed nor McHann had any personal involvement with the removal of the chair.

When questioned by counsel for the ADC, Plaintiff testified the medical script he has does not specify any particular shower chair, but rather, it just says "use a shower chair." Plaintiff agreed he did not have any conversations with either Defendant McHann or Reed about the shower chair. He further testified he fell in the shower and then filed his lawsuit. Counsel asked about

4

his deposition testimony when he stated that he fell in the shower the week before his deposition for this case. Plaintiff agreed he did not include any allegations about falling in the shower in his Complaint. When asked if he reported the fall to anyone, he testified that he had, but he did not know the individual's name.

When questioned by counsel for Defendant Pratt, Plaintiff testified he thought he had rotator cuff surgery last year in 2015. He testified that it hurt long before he had the surgery. He then testified, "I hurt it, and had surgery about a month later."

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the non-moving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the non-moving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  DISCUSSION

**A.  Failure to Exhaust – Defendants Reed, McHann, and Pratt**

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before an inmate files suit.  Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

"[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted).  The "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.*; *Burns v. Eaton,* 752 F.3d 1136, 1141 (8th Cir. 2014).

Administrative Directive 12-16 ("AD 12-16") governs the ADC grievance procedure. (Doc. 36, p. 3)  Administrative Directive 12-16(C)(4) states: "Grievances *must specifically name each individual involved for a proper investigation and response to be completed by the ADC*. Inmates must fully exhaust the grievance prior to filing a lawsuit.  Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court for failure to exhaust against all parties."  (Doc. 34-1, pp. 4-5) (Emphasis added.)  Administrative Directive 12-16(E)(2) requires that a Unit Level grievance must contain a brief statement "that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form."  (Doc. 34-

1, p. 5)  Further, Administrative Directive 12-16(G)(2) prohibits additional "issues, requests, and/or names which were not a part of the original grievance as they will not be addressed" in a grievance appeal.  (Doc. 34-1, p. 11)

Plaintiff attached only one Grievance to his Complaint, Grievance OR-12-01570, which was exhausted on January 31, 2013.  (Doc. 2, pp. 6-8)  Plaintiff testified this was the only Grievance he filed concerning the shower chair.  Defendant McHann and Reed are clearly not named in this Grievance.  Therefore, Plaintiff's claims were not exhausted pursuant to AD 12-16 against Defendants McHann and Reed.  Plaintiff did not name Defendant Pratt in the original Grievance, but he added Defendant Pratt in his appeal submitted on December 20, 2012.  As Plaintiff may not add a new name to a grievance at the appeal level, pursuant to AD 12-16(G)(2), Plaintiff's claim against Defendant Pratt was not exhausted.

As Plaintiff did not exhaust his administrative claims against these Defendants before filing this case, his claims against them should be dismissed.

### B. Denial of Medical Care - Defendant Dycus

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs.  *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).  To prevail on an Eighth Amendment claim, a plaintiff must prove that the defendants acted with deliberate indifference to plaintiff's serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those

needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.* (internal citation omitted).

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. at 104–05.  However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish."  *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).  The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record.  *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).  Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay.  *See Schaub v. VonWald,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Plaintiff has not met either prong of the requirement to show deliberate indifference.  Plaintiff has not shown an objectively serious medical need for a particular type of shower chair.  At the hearing, Plaintiff testified he had a medical script for the use of a shower chair due to his rheumatoid arthritis, but he could not remember what doctor gave him that script.  When questioned further, he testified that the medical script did not specify any particular type of shower chair, just "use shower chair."  Plaintiff has not provided a copy of any medical script with any of his documentation for this case.  Plaintiff further agreed that a replacement chair was provided promptly, and that there are permanently attached benches available in the showers.  In his Grievance he stated he could not use the replacement chair or the benches because he needed help to get up from them; however, at the hearing, he testified that the benches were only "a little harder

to reach." Photos of the benches provided by Defendants show sturdy metal benches with a metal handicap rail bolted into the wall next to the bench for an inmate to use in lowering to or rising from the bench. (Doc. 34-5, pp. 2-3)

Nor can Plaintiff show that Defendant Dycus deliberately disregarded his need for a shower chair or delayed the provision of a shower chair for his use. At both the hearing and in his deposition in 2013, Plaintiff testified a replacement chair was brought in the day after the original chair was removed, and a permanent bench was available in the shower at all times. Additionally, Plaintiff was repeatedly offered the opportunity to follow his preferred chair to a different barracks, but he refused to do so. According to his deposition, the move would have been upstairs from his current barracks. He acknowledged the offer to move, but he stated "I don't want go up upstairs. … I'm staying right where I am." (Doc. 39-2, p. 6) Thus, Plaintiff was not denied a shower chair or other treatment options to let him shower independently with his rheumatoid arthritis. He merely disagreed with the type and location of the treatment options offered. This is not a constitutional violation under § 1983.

Plaintiff has also not provided any verifying medical evidence that the loss of his preferred shower chair in his preferred barracks resulted in any detrimental injury. Plaintiff did allege and testify to falling once when he was trying to transfer from his wheelchair to the replacement chair, which he claims resulted in the need for rotator cuff surgery; however, he could not remember who he reported the fall to, and he submitted no records to indicate any injury or surgery. He did not include any mention of a fall, injury, or surgery in his Complaint. Finally, his testimony regarding when his fall and surgery happened is both internally inconsistent and blatantly contradicted by the record. Early in the hearing, Plaintiff testified that he fell before he filed his Complaint in

2013. Later in the same hearing, Plaintiff testified that he had the rotator cuff surgery in 2015; and, he stated that he hurt it and had the surgery about a month later. In his deposition in October 2013, he stated had only fallen out of the replacement chair once, and that occasion was the week before the deposition. (Doc. 39-2, p. 6) In his January 15, 2014 Objection to Judge Marschewski's Report and Recommendation related to Defendant Pratt's Motion to Dismiss, Plaintiff alleged falling and injuring his shoulder when the replacement shower chair flipped sideways, but he does not mention a date of the fall or having any surgery despite being evaluated by x-rays. (Doc. 27, p. 1) Nothing submitted by either Plaintiff or Defendants showed any report of, or treatment for, a fall.

Accordingly, no genuine material question of fact remains for resolution in this case.

### IV. CONCLUSION

For the reasons stated above, I recommend that Defendants' Motions for Summary Judgment (Docs. 34, 38) be **GRANTED**, and that Plaintiff's Complaint be dismissed against all remaining parties with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of June, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE